# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **OSO GRANDE TECHNOLOGIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **No.  23-CV-00524** |
| **BCG ASSETS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Plaintiff *Oso Grande Technologies, Inc.'s Motion for Default Judgment* (ECF No. 14) against Defendant BCG Assets, Inc. The Court has reviewed the motion, complaint, the evidence, the record, and the relevant law, and will deny without prejudice the *Motion for Default Judgment* for failing to establish that this Court has diversity jurisdiction over this case.

## I.      LAW REGARDING ENTRY OF DEFAULT JUDGMENT

A Court must enter default judgment against a party against whom a judgment for affirmative relief is sought who has failed to plead or otherwise defend, as evidenced by an affidavit or other proof. *See* Fed. R. Civ. P. 55(a). Entry of default alone is not sufficient to enter a default judgment. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010). Once a default is entered, the court must determine that it has jurisdiction, that the unchallenged facts establish liability based on a legitimate cause of action, and that the party is entitled to the relief requested. *See id.* at 761-62; *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the

parties."); *SPFM, L.P. v. Felix*, SA-16-CV-00179-XR, 2016 WL 5854286, at *1 (W.D. Tex. Oct. 5, 2016) ("In considering any motion for default judgment, the court must examine (1) jurisdiction, (2) liability, and (3) relief requested.").

"Personal jurisdiction over the defendant is required before a default judgment in a civil case may be entered." *Bixler*, 596 F.3d at 761. A court sitting in diversity may only assert personal jurisdiction over a defendant when the forum state's long-arm statute permits the exercise of jurisdiction, and it comports with the due process requirements of the Fourteenth Amendment. *See Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). Additionally, service of process under Federal Rule of Civil Procedure 4 provides the mechanism by which the Court asserts jurisdiction over the person of the party served. *Hukill v. Oklahoma Native American Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008).

"Once a district court concludes that it has the power to enter a default judgment against a defendant, the court next must determine whether the well-pled allegations of the complaint, if true, state a claim for relief." *Nevada General Ins. Co. v. Anaya*, 326 F.R.D. 685, 693 (D.N.M. 2018). A district court reviewing a motion for default judgment accepts as true all well-pled allegations in a complaint, except those related to indefinite or uncertain damages. *See United States v. Craighead*, 176 F. App'x. 922, 925-25, 2006 WL 936684 (10th Cir. Apr. 12, 2006) (unpublished). Entering a default judgment establishes that the defendant is liable to the plaintiff on each cause of action alleged in the complaint. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). Even after determining default judgment is appropriate as to liability, the allegations regarding damages are not deemed true and do not necessarily establish whether a particular remedy is appropriate. *e360 Insight*, 500 F.3d at 602-04. A plaintiff seeking an injunction has the burden of persuasion to demonstrate it is entitled to the equitable remedy sought

and that remedies available at law, such as monetary damages, are inadequate to compensate for that injury. *Id.* at (quoting *Walgreen Co. v. Sara Creek Property Co., B.V.*, 966 F.2d 273, 275 (7th Cir. 1992)). A court has broad decision in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).

## II.   FACTUAL BACKGROUND

Plaintiff Oso Grande Technologies, Inc., ("Oso Grande") is a corporation organized under the laws of New Mexico with its principal place of business in New Mexico. (Compl. ¶ 1, ECF No. 1.) Defendant BCG Assets, Inc., ("BCG") is a corporation organized under the laws of Nevada and is doing business in New Mexico. (*Id.* ¶¶ 2-3; Ray Aff. ¶ 3, ECF No. 11-1.) BCG named Ross Perkal as its registered agent for purposes of accepting service of process in New Mexico. (Ray Aff. ¶ 3, ECF No. 11-1).

BCG owns dark optic fibers located within the storm drain and public sewer rights-of-way of the City of Albuquerque, New Mexico, and various segments of dark optic fibers connecting the ring fibers to the buildings within Albuquerque. (Compl. ¶ 9, ECF No. 1.) Oso Grande is a New Mexico technology company offering custom data center and colocation services and network hosting and cloud services. (*Id.* ¶ 7.) Oso Grande also offers high-capacity internet connectivity in and around Downtown Albuquerque through its fiber including the fiber that is the subject of this suit, and it is contractually bound to other entities to ensure that its customers do not experience outages, disruptions, or losses of connectivity. (*Id.* ¶ 8.)

On November 8, 2005, Oso Grande entered into a series of agreements with BCG, including an "Indefeasible Right of Use" Agreement ("IRU Agreement"). (*See id.* ¶ 10; IRU Agreement, ECF No. 1-1 at 1 of 22; IRU Sale Agreement, ECF No. 1-2 at 2 of 18.) "BCG Fibers" refer to the fibers defined in the IRU Agreement. (Compl. ¶ 11, ECF No. 1.) Oso Grande paid

valuable consideration for the grant of the indefeasible right of use and all of the agreements and promises attendant to that grant, as set forth in the IRU Agreement. (*Id.* ¶ 18.) BCG granted Oso Grande an indefeasible and exclusive right of use to twelve ring fibers and twelve building fibers of the BCG Fibers. (*Id.* ¶ 12.) The indefeasible right to use with respect to the Fibers was for a term of at least 19 years. (IRU Sale Agreement, ECF No. 1-2 at 2 of 18.)

To approve the transfer of the City License from Oso Grande to BCG, the City of Albuquerque required Oso Grande to have the right to take control of the BCG Fibers in case of default. (Jontz Aff. ¶ 6, ECF No. 14-1.) Accordingly, in the 2005 series of agreements, Oso Grande sold the BCG Fibers to BCG with a right to purchase it back upon default. (*Id.*) Moreover, pursuant to the IRU Agreement, if BCG elected to sell, transfer, or assign assets covered by the IRU to a third-party, Oso Grande had the right of first refusal to purchase the assets on the same terms and conditions. (IRU Agreement ¶ 13.2, ECF No. 14-1 at 21 of 53.)

Oso Grande relies on the functionality of and access to these fibers to provide network and data services to its customers. (Compl. ¶ 13, ECF No. 1.) To facilitate the functionality of the fibers and access thereto, BCG agreed to provide testing, maintenance, service, and physical access to the fibers. (*Id.*) BCG agreed to provide Oso Grande a reasonable form of physical access to the buildings, sewer and drainage rights-of-way, BCG equipment, and lands to which the fibers are attached. (*Id.* ¶ 14; IRU Agreement ¶ 1.2, ECF No. 14-1 at 9 of 53.) BCG also agreed to provide Oso Grande 24/7 access to each of the buildings associated with the building fibers subject to the IRU Agreement, to the extent BCG had such access, in addition to splice boxes, patch panels, and conduits. (Compl. ¶ 15, ECF No. 1.) BCG is also required to maintain its licensing franchise or license from the City of Albuquerque to operate the fibers lawfully. (*Id.* ¶ 17.)

Under the IRU Agreement, BCG is required to perform scheduled maintenance, and unscheduled maintenance in the event of emergencies, such as outages. (*Id.* ¶ 16.) BCG, as owner of the fibers, agreed to keep the fibers operational and to provide Oso Grande with physical access so that Oso Grande may also assure operability. (*Id.*) The parties also agreed to cooperate with and support the other in complying with requirements applicable to their respective rights and duties under the contract. (IRU Agreement ¶ 7.5, ECF No. 14-1 at 14 of 53.)

Starting on November 29, 2022, Oso Grande lost service from the twelve ring fibers that are the subject of the IRU Agreement, preventing it from serving its customers with access to the internet or transmitting telecommunications signals and causing the customers to suffer costly interruptions of service. (Compl. ¶ 20, ECF No. 1.) BCG failed to maintain and repair the fibers and has not provided Oso Grande physical access to make repairs. (*Id.* ¶ 21.) BCG also failed to preserve access to the buildings and facilities associated with the fibers and allowed its franchise with the City of Albuquerque to lapse or be in default. (*Id.* ¶ 22.)

Although the IRU Agreement required BCG to maintain access to buildings containing critical connection points, BCG defaulted on a lease for space in the 505 Marquette building that housed and facilitated some of the fiber connections. (*See id.* ¶ 25.) Instead of paying the judgment for past due rent, BCG disconnected the fibers upon which Oso Grande relied in the building. (*Id.*)

On December 6, 2022, Oso Grande notified BCG of the outage and gave BCG the opportunity to cure the various breaches, but BCG did not respond. (*Id.* ¶ 24.) Oso Grande nevertheless tendered the required payments when due until January 2023. (*Id.* ¶ 23.)

The IRU Agreement expressly provides that, in the event of a default by BCG, Oso Grande has the right, but not the obligation, to purchase all of the BCG Fibers (as defined in the IRU Agreement) for the price calculated by reducing 1/19th of $125,000 for each year that the IRU

Agreement is in effect. (*Id.* ¶ 26.) On January 17, 2023, counsel for Oso Grande issued a demand letter to BCG, stating that Oso Grande would exercise its right under the IRU Agreement to purchase the BCG Fibers. (Compl. ¶ 26, ECF No. 1.) Oso Grande informed BCG it would exchange a certified check in the amount of $13,500 for the executed Bill of Sale. (Compl. ¶¶ 26-27, ECF No. 1; Demand Letter, ECF No. 1-3 at 3 of 6.) BCG did not respond to the demand latter. (Compl. ¶ 28, ECF No. 1.) Oso Grande has reason to believe that BCG may have sold or attempted to sell the BCG Fibers to a third-party, the identity of which is unknown to Oso Grande. (Jontz Aff. ¶¶ 33-34, ECF No. 14-1.) As of October 11, 2023, the twelve ring fibers had not been returned to service. (Jontz Aff. ¶ 16, ECF No. 14-1.)

On June 19, 2023, Plaintiff filed its Complaint for Breach of Contract, Damages, and for Injunctive Relief ("Complaint"). (*See* Compl., ECF No. 1.) In Count I, Oso Grande asserts that by failing to accept the tender and failing to deliver the BCG Fiber, BCG breached the IRU Agreement. (*Id.* ¶ 29.) It also alleges BCG breached the contract by failing to complete annual maintenance, failing to maintain relationships with building and property owners to ensure physical access, failing to preserve its license or franchise agreement with the City of Albuquerque, failing to preserve the functionality of the fibers, permitting the fibers to remain inoperable, and refusing to take action to cure the problems despite multiple notices and legal demand. (*Id.* ¶¶ 36-37.) In Count II, Oso Grande asserts it is suffering irreparable harm and seeks an injunction against BCG. (*Id.* ¶¶ 41-46.) Oso Grande seeks specific performance in Count III: the right to purchase the fibers subject to the IRU Agreement as a remedy for BCG's breach of contract. (*Id.* ¶¶ 47-50.) In Count IV, Oso Grande asserts a claim for unjust enrichment based on its acceptance of payments, yet refusal to tender title to the fibers and failing to remedy the disruption in service and functionality of the fibers. (*Id.* ¶¶ 51-53.)

On July 17, 2023, Plaintiff caused a copy of the Complaint and summons to be served personally on Ross Perkal at the address of 1015 Laurel SE, Albuquerque, NM, 87108. (Proof of Service, ECF No. 4; Ray Aff. ¶ 4, ECF No. 11-1.)[1] The deadline for Defendant to answer or otherwise file a responsive pleading was 21 days thereafter, on August 7, 2023.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i). BCG failed to file an answer within the 21 days provided by the rules.

On September 14, 2023, Plaintiff filed an application asking that the Clerk of the Court enter default against BCG, which it did the following day. (Pl.'s Application, ECF No. 11; Clerk's Entry of Default, ECF No. Doc. 12.) Plaintiff now moves the Court for a default judgment. It seeks multiple forms of relief. First, it seeks findings that BCG breached the IRU Agreement when it shut down the BCG Fiber on or around November 29, 2022, and when it failed to transfer the fibers to Oso Grande upon default and demand. (Pl.'s Mot. 4, ECF No. 14.) Additionally, it seeks findings that BCG's activities caused Oso Grande damages and that BCG has been unjustly enriched. (*Id.*) Plaintiff seeks an award of damages as well as the following injunctive relief: order the transfer of ownership of the BCG Fibers for the tendered contractual price; issue an injunction to require BCG to restore physical access to all buildings, rights-of-way, panels, conduits, and access points, as required under the IRU Agreement; order BCG to make an accounting of all payments received since default and refund all payments Oso Grande made under the IRU Agreement since November 29, 2022; order BCG to identify any parties to whom it transferred any part of the BCG Fiber; and declare any transfers of any part of the BCG Fiber null and void. (*Id.* at 4-5.) Plaintiff further asks for "the right to seek further assistance from the Court in executing the judgment." (*Id.* at 5.)

### III.    ANALYSIS

---

[1] According to the New Mexico Secretary of State's search information page, Ross Perkal's listed physical address was 708 Marquette Ave. NW, Albuquerque, NM 87102. (*See* Secretary of State Listing, ECF No. 11-1 at 4 of 5.)

Oso Grande asserts in the Complaint that the Court has diversity jurisdiction over the subject matter. *See* 28 U.S.C. § 1332. A corporation is deemed the citizen of every State by which it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Oso Grande did not address subject matter jurisdiction in its motion for default judgment. Although the Complaint establishes that BCG was created under the laws of Nevada, it does not allege where BCG has its principal place of business. The Court is therefore lacking a critical fact necessary to establish complete diversity of citizenship of the parties.

Nor does the Complaint or the record contain enough facts to establish that the amount in controversy exceeds $75,000. The demand for the Bill of Sale was for only $13,500. (Demand Letter, ECF No. 1-3 at 3 of 6.) Plaintiff alleges BCG was unjustly enriched by "accepting payments." (Compl. ¶ 52, ECF No. 1). Although not alleged in the Complaint, Plaintiff highlighted from Attachment 2 to the IRU Agreement portions of the "Maintenance Fees and Costs" section, which state that Oso Grande "shall pay BCG a fee for Scheduled Maintenance based on eight percent (8%) of the directly associated costs of maintenance of the BCG Fibers …, not to exceed $10,000.00 per year …." (IRU Agreement, ECF No. 1-1 at 21 of 22.) That Scheduled Maintenance fee is "reduced at the beginning of the second anniversary of the IRU Term and on each anniversary thereafter to reflect the removal of any abandoned fibers from the calculation." (*Id.*) The IRU Agreement was signed on November 8, 2005. (*Id.* at 1 of 22.) It is therefore not apparent from the Complaint and evidence that the amount of the payments underlying the unjust enrichment claim are high enough to reach the $75,000 threshold. The Court recognizes that Plaintiff seeks as one of its remedies an accounting of all payments received since default, (Compl. ¶ F, ECF No. 1 at 10 of 10), but the Court needs some facts to suggest the amounts of those payments to determine the amount in controversy. Finally, Oso Grande asserts that the outages

have caused its goodwill to suffer and that it has lost customers and revenue, such that the "outages have been significant and costly to Oso Grande and its customers." (Compl. ¶ 39, ECF No. 1.) Once again, Oso Grande does not make any specific allegations of damages that would allow the Court, on the current record, to find that the amount in controversy exceeds $75,000.[2] The Court will therefore deny the motion for default judgment without prejudice for failure to establish subject matter jurisdiction.

This Court must assure itself that it has jurisdiction over this case. Therefore, the Court orders Plaintiff to file a written brief showing cause why this case should not be dismissed for lack of subject matter jurisdiction by January 4, 2024. Plaintiff should address the Court's concerns identified herein. Alternatively, Plaintiff may include the showing in a renewed motion for default judgment.

**IT IS THEREFORE ORDERED** that *Oso Grande Technologies, Inc.'s Motion for Default Judgment* (**ECF No. 14**) is **DENIED WITHOUT PREJUDICE**. Plaintiff is further ordered to **file a written brief showing cause by January 4, 2024,** why this case should not be dismissed for lack of subject matter jurisdiction.

_____

SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Notably, ¶ 8.7 of the IRU Agreement contains a clause all in capital letters, entitled "NO CONSEQUENTIAL DAMAGES." The clause states: "NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, RELIANCE, OR SPECIAL DAMAGES SUFFERED BY SUCH OTHER PARTY (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR HARM TO BUSINESS, LOST REVENUES, LOST SAVINGS, LOST PROFITS OR OTHER ECONOMIC LOSS SUFFERED BY SUCH OTHER PARTY), REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT … OR TORT." Plaintiff has not addressed the impact of this clause, if any, on the amount in controversy.